# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2014

## STACY LEE FLEMING v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 6115     Honorable Joe H. Walker, III, Judge**

---

### No. W2013-02160-CCA-R3-PC  - Filed August 27, 2014

---

The Petitioner, Stacy Lee Fleming, appeals the Tipton County Circuit Court's denial of post-conviction relief from his conviction for delivery of .5 grams or more of cocaine. On appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. JEFFREY S. BIVINS, J., Not Participating.

Gary F. Antrican, Somerville, Tennessee, for the Defendant-Appellant, Stacy Lee Fleming.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Mike Dunavant, District Attorney General; and Jason R. Royner, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from an undercover drug purchase by two informants, Sean and Samantha Newman, and John Thompson, Director of the 25th Judicial District Drug Task Force. This undercover drug purchase led to the arrest and subsequent conviction of the Petitioner for delivery of .5 grams or more of cocaine. This court summarized the underlying facts on direct appeal as follows:

> [O]n the night of December 1, 2007, the confidential informants met with Director Thompson and arranged to make a drug purchase. They originally planned to buy drugs from a particular individual, not [the Petitioner], at a gas station. All three of them got into Newman's vehicle and went to the gas

station. Newman was the driver, Samantha[1] rode in the front passenger seat, and Director Thompson, dressed in plain clothes, sat in the back seat.

Newman testified that they arrived at the gas station and Samantha immediately recognized [the Petitioner] in a parked vehicle. Newman said [the Petitioner] was in the driver's seat and had a passenger. The passenger got out of the vehicle and walked into the store. Newman said he pulled to the right of [the Petitioner]'s vehicle and began a conversation. Newman asked [the Petitioner] if he had any Xanax bars. [The Petitioner] provided a non-responsive answer. Newman then asked, "What you got on you?" [The Petitioner] held up a bag containing what appeared to be cocaine. He then offered to sell the cocaine for fifty dollars.

Newman asked Director Thompson if he wanted to buy the cocaine. Director Thompson told Newman to make the purchase and he gave Newman fifty dollars. Newman said [the Petitioner] asked about the passenger in the back seat, referring to Director Thompson. Newman told [the Petitioner] that Director Thompson's name was "Little Darrell." Newman testified that he gave [the Petitioner] fifty dollars in exchange for a bag of cocaine. Newman then returned to his vehicle and handed the cocaine to Director Thompson. Newman said [the Petitioner] was alone in his vehicle when the transaction occurred.

Newman admitted that he pled guilty to two counts of submitting worthless checks, two counts of retaliation for past actions, five counts of forgery, one count of theft over a thousand dollars, and one count of failing to make a court appearance. He pled guilty to these offenses in July of 2009. He denied, however, receiving a plea deal in those cases or receiving any leniency in criminal proceedings based on his work as a confidential informant. He claimed he entered a "blind plea," in which the trial court decided his sentence. On cross-examination, Newman testified that he was not currently in prison. He said he was serving a probationary sentence of four and a half years. Newman acknowledged that he was paid for testifying in court and having previously worked as a confidential informant.

Samantha testified and substantially corroborated Newman's testimony. In addition, she explained that she had known [the Petitioner] for several years before the drug purchase. She acknowledged that she was also being paid to

---

[1] Because both confidential informants share the same last name, we will refer to Samantha Newman by her first name only. We intend no disrespect in doing so.

-2-

testify and that she had pending charges in Tipton County.

Director Thompson testified and further corroborated the testimony of the confidential informants. He additionally testified that they did not use a wire or video equipment that night. At the gas station, Director Thompson noticed [the Petitioner] was in the driver's seat and another individual was in the passenger's seat. The passenger got out of the vehicle and went into the store. Director Thompson said Newman pulled up next to [the Petitioner]'s vehicle and began a conversation. [The Petitioner] asked about the identity of Director Thompson. Newman referred to him as "Little Darrell." Director Thompson said Newman asked [the Petitioner] if he had any "ladders," meaning Xanax. [The Petitioner] gave a non-responsive answer. He then held up a bag containing a white substance and said, "Fifty." Director Thompson said Newman asked him whether to make the purchase. Director Thompson told Newman to buy the cocaine and handed him fifty dollars. Newman then got out of his vehicle, went to the passenger's window of [the Petitioner]'s vehicle, and conducted the transaction. Director Thompson said Newman immediately returned to his vehicle and handed him the bag of cocaine. Director Thompson testified that the bag remained in his custody until he gave it to Investigator Robbins.

Agent Erica Moody Katherine, a forensic scientist for the Drug Identification Unit of the Tennessee Bureau of Investigation and an expert in drug identification, examined a rocklike substance which she received from the Atoka Police Department. The subject name was Stacy Fleming. She found that the substance contained 0.55 grams of cocaine. Agent Katherine said this measurement had a standard deviation of 0.03 grams. On cross-examination, Agent Katherine acknowledged that the weight of a substance could be affected by outside factors.

Randall Robbins, an investigator with the Drug Task Force of the Atoka Police Department, testified that the confidential informants involved in this case were each paid fifty dollars for their services. Investigator Robbins testified that on December 1, 2007, he received contraband from Director John Thompson. Investigator Robbins placed the contraband in a plastic bag and filed a request for examination with the crime lab for the Tennessee Bureau of Investigation. He put the contraband in a safe at the Atoka Police Department so that Investigator Christopher Ellwood could send it to the crime lab the following morning. Investigator Robbins said he was not at the scene of the drug purchase.

On cross-examination, Investigator Robbins acknowledged that many confidential informants have drug problems, criminal records, or face pending charges. He said Newman was under investigation for several offenses at the time he served as a confidential informant. Investigator Robbins acknowledged that Newman was subsequently convicted of multiple felonies. Investigator Robbins said he spoke with the district attorney's office about Newman's work as a confidential informant.

Investigator Christopher Ellwood testified he transported the contraband from the Atoka Police Department to the crime lab for the Tennessee Bureau of Investigation.

Mary Payne ("Payne"), a friend of [the Petitioner]'s, testified that she, and her husband, Joshua Payne ("Joshua"), were with [the Petitioner] on the night of the offense. They drove to Memphis in [the Petitioner]'s vehicle to buy cocaine. Payne said she paid fifty dollars for half a gram. The dealer weighed the cocaine before the purchase. Payne testified that on the drive home, they ingested cocaine. She said they sniffed the cocaine off their car keys, which they dipped into the bag. Payne stated, "I know I did probably about three keys . . . ." Upon returning to Tipton County, they stopped at a gas station to buy beer and cigarettes. Payne went into the store by herself. [The Petitioner] and Joshua remained in the vehicle. They were upset when she returned. She stated, "Well, my husband and [the Petitioner] were pretty upset because [Newman] had come up to the car and they were keying the powder and he had snatched it from them and threw the money in the car." Payne did not observe these events. She said [the Petitioner] gave her fifty dollars when she got in the vehicle. Payne testified that at the time, she was under the influence of wine, cocaine, and marijuana. She said her husband and [the Petitioner] were also under the influence while at the gas station.

[The Petitioner] testified that he was with Payne and Joshua on the night of the offense. They drank a few glasses of wine before driving to Memphis to purchase cocaine. [The Petitioner] said Payne purchased half a gram for fifty dollars. They started using the cocaine on the drive home. [The Petitioner] testified that they stopped at a gas station to get beer and cigarettes. He parked in the front of the store and Payne went inside. [The Petitioner] noticed that Newman was parked behind the gas pump. [The Petitioner] said he had known Newman since elementary school and that they were friends. He claimed they had done drugs together in the past. [The Petitioner] said Newman once told him that he was a confidential informant. He testified that

-4-

at the gas station, Newman got out of his vehicle and started walking towards him. Newman went to the driver's side window and asked [the Petitioner] if he could get fifty dollars worth of cocaine. [The Petitioner] told Newman that he did not have fifty dollars worth; however, he offered to give Newman a line of cocaine. Joshua was in possession of the bag of cocaine. [The Petitioner] said Newman stuck his head in the window and snatched the bag from Joshua's hand. Newman ran back to his vehicle and handed the bag to somebody inside. Newman came back to [the Petitioner]'s vehicle and threw fifty dollars inside. Newman then returned to his vehicle and drove away. [The Petitioner] estimated that the stolen bag contained only 0.3 grams of cocaine.

Following the testimony at trial, [the Petitioner] was convicted of delivering more than 0.5 grams of cocaine, a Schedule II controlled substance. The trial court found that he qualified as a career offender based on four prior Class B felonies. [The Petitioner] was sentenced to thirty years in the Tennessee Department of Correction.

State v. Stacy Lee Fleming, W2009-02192-CCA-R3CD, 2011 WL 1135760, at *1-3 (Tenn. Crim. App. Mar. 28, 2011), perm. app. denied (Tenn. July 14, 2011). This court affirmed the Petitioner's conviction on appeal. Id. at *1. On July 30, 2012, the Petitioner filed a timely pro se petition for post-conviction relief. The Petitioner was subsequently appointed counsel, and an amended petition was filed on his behalf.

At the August 27, 2013 post-conviction hearing, the Petitioner testified that after he was indicted in the instant case he went to Leslie Ballin's office to hire him as an attorney but "agreed to accept an interview with [counsel]" instead. The Petitioner stated, "from that point I guess [counsel] just put himself on my case." The Petitioner estimated that he and counsel only met three to four times before trial. The Petitioner wanted counsel to continue his case, but counsel refused to do so. The Petitioner "never got a chance to pay [counsel] all of his money," and the Petitioner believed that "caused [counsel's] performance to be lacking."

The offense occurred outside of "Connie's Store," and the Petitioner thought it would be "a good idea" to go to the scene with counsel but "it never happened." Additionally, counsel never attempted to talk to any of the employees at Connie's Store that were working on the evening of the offense or other possible witnesses. The Petitioner talked to counsel about a surveillance video that the Petitioner believed "would have proved a lot of [his] testimony as to what . . . really happened." However, "at that time [the Petitioner and counsel] kind of came to the conclusion that it was probably too late to [obtain] the

videotape." The Petitioner could not recall whether counsel had checked on the existence of the video.

The Petitioner testified that all of the witnesses at trial testified that the substance the Petitioner delivered was a powder. However, the lab report stated that the substance was a "rock-like substance." The Petitioner testified that he knew "for sure" that the substance taken from him that night was not the same substance that was sent to the lab because he remembered snorting powder cocaine that night and "[y]ou can't snort a rock." The Petitioner acknowledged that counsel "might have mentioned" the discrepancy in the evidence during trial but stated that counsel did not "put up an argument about it." The Petitioner asked counsel about having the substance independently analyzed and weighed, but counsel told the Petitioner that the "judge probably would lock both of [them] up if [he] asked that."

The Petitioner testified that he had known Sean Newman, one of the State's informants, since kindergarten. The Petitioner knew Mr. Newman was an informant and maintained that he had never sold drugs to Mr. Newman before. Prior to the offense, Mr. Newman accused the Petitioner of having an affair with his wife, Samantha. The Petitioner told counsel about the accusation, but counsel never brought it up at trial or questioned Mr. Newman about whether he would have an incentive to lie about the Petitioner. Additionally, during trial, the Petitioner tried to testify that the Newmans' children had recently been taken from them in an attempt "to prove[] that [Mr. Newman] was desperate and that he was willing to do just about anything to get those children back." The prosecution objected to this testimony, which was sustained by the trial court, and counsel failed to make an offer of proof.

The Petitioner wanted counsel to talk to Kevin Watson, a possible witness, before trial, but counsel never did. Mr. Watson was alleged to be the intended target of the drug purchase by the informants that night. The Petitioner believed that it would be important to talk to Mr. Watson "to see if Sean Newman was wearing a wire, or [whether] they ha[d] any surveillance, and what type of drug was purchased from Mr. Watson the same night and at what time." He believed Mr. Watson's testimony could have at least contested the time line of events. The Petitioner also thought counsel should have attacked Director Thompson's ability to see the transaction on the night in question. The Petitioner testified that he was driving a Ford Explorer with very tinted windows, which sat much higher that the Toyota Camry in which Director Thompson was sitting during the transaction. The Petitioner "thought all those facts were important" to show that Director Thompson could not see the transaction, but counsel never "mentioned anything about it" during trial.

-6-

The Petitioner recalled that during trial, counsel asked Investigator Robbins whether the Newmans were being compensated for their testimony. Investigator Robbins acknowledged that they were being paid for their testimony and time but did not say anything about a plea deal for the Newmans regarding their pending charges. Counsel attempted to question Mr. Newman about possible sentences Mr. Newman might receive for his pending charges and about compensation for his testimony, but the trial court sustained the prosecution's objection regarding this testimony. Counsel failed to make an offer of proof on these issues. The Petitioner was "hoping to show that [Mr. Newman] received some kind of deal and that was his incentive for giving his testimony." The Petitioner recalled that counsel did not pursue that line of questioning with Samantha.

The Petitioner wanted counsel to attack the validity of the indictment because the indictment charged him with the delivery of .5 grams of cocaine, not .5 grams "or more." Counsel told the Petitioner that the indictment was sufficient so he did not challenge its validity.

Counsel testified that at the time of the Petitioner's trial, he had been practicing law for five years and had conducted 15 to 20 trials. Counsel did not know whether the Petitioner came to his firm's law office to hire someone specifically. He testified that when someone comes into the office to speak with a specific attorney, he will talk with the person if the other attorney is unavailable. However, counsel maintained that if a client wants to hire a specific attorney, the firm "will honor that request." He added that he has "more work" than he can handle so if the Petitioner wanted to hire another attorney, he would have been "glad to give" the case to "whoever else [the Petitioner] requested."

Counsel testified that he met with the Petitioner "numerous times" during his representation of the Petitioner. Counsel stated that he did not go to Connie's Store, the location where the crime occurred, nor seek a video from the store for the night of the offense. He stated that he did not "remember there ever being discussions about videos existing or not existing," and if the Petitioner had talked about a video, counsel would have asked the State for a copy of the video. The offense occurred on December 1, 2007, the indictment was issued on November 2, 2008, and counsel was retained in 2009; thus, counsel would have "been surprised" if any video still existed at that point. Counsel reviewed pictures of Connie's Store prior to trial, and he talked to all of the testifying witnesses.

Counsel recalled that the State's witnesses testified that the cocaine delivered by the Petitioner was powder, which was "completely inconsistent" with the rock-like cocaine introduced into evidence. He testified that during closing argument, he picked up the evidence bag and shook it so the jury could hear the "rock rattle around," and he pointed out the inconsistency in the evidence to the jury. Counsel did not recall discussing with the

Petitioner whether to hire an independent expert to analyze and weigh the cocaine. He agreed that there was "no reason not to have" it independently analyzed and stated, "[I]n retrospect, if I had it to do over again, it would probably have been a good idea." Counsel added, however, that he had no reason to believe that the evidence was anything other than cocaine.

Counsel recalled that the Petitioner mentioned that Mr. Newman had previously accused the Petitioner of having an affair with his wife, Samantha, and agreed that it could have been incentive for the Newmans to present untrue testimony against the Petitioner. Counsel did not recall specifically trying to elicit testimony from the Newmans about whether their children had been removed from their home but agreed that sounded "familiar." Counsel testified that Mr. Newman's "bias or motive to lie came up during cross-examination;" however counsel was "cut off" by an objection during this line of questioning and did not make an offer of proof. Counsel stated that he did not pursue that line of questioning as much with Samantha because he believed that some of her testimony was helpful to the Petitioner so he did not "want[] to tear her down too much."

Counsel did not contact Kevin Watson and could not recall whether Mr. Watson was the original intended target for the drug purchase at Connie's Store. He did not recall discussing Mr. Watson at length with the Petitioner and stated that he did not believe it was a big issue because "regardless of who [Director Thompson was] there to buy from, . . . – that wouldn't have changed the testimony that they bought from [the Petitioner]." Counsel could not recall whether he "ma[d]e an issue out of the fact that the [Petitioner's Ford Explorer] windows were tinted and it set up a lot higher that then Toyota Camry," making it difficult for Director Thompson to observe the transaction.

Counsel did not recall talking to the Petitioner about a defect in the indictment but testified that he did not think he "would have done anything differently had [the Petitioner] brought that up" to counsel. The indictment charged the Petitioner with delivering .5 grams of cocaine, which was not worded exactly like the statute, but counsel did not "believe it has to be."

Following the hearing, the court took the matter under advisement and issued an order denying relief on August 23, 2013. In denying relief, the court concluded that the Petitioner failed to establish deficient performance by counsel or prejudice to the Petitioner.

It is from this order that the Petitioner timely appeals.

## ANALYSIS

On appeal, the Petitioner contends that he received ineffective assistance of counsel, raising numerous alleged deficiencies as grounds for his claim. The State responds that the Petitioner has failed to establish deficient performance or prejudice arising therefrom, and therefore, the post-conviction court properly denied relief. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner first complains that counsel never went to the scene of the crime and did not inquire about the availability of a surveillance video to corroborate the Petitioner's testimony. The Petitioner maintains that the video "would have shown the scene to be favorable to [the Petitioner]'s testimony," and "could have shown what actually took place." Counsel acknowledged that he did not visit the crime scene but testified that he reviewed photographs of the scene and the vehicles involved. Further, he testified that he did not recall any discussions with the Petitioner about a surveillance video and would have been "surprised" if one existed when he was retained more than a year after the crime. The post-conviction court implicitly accredited the testimony of counsel and concluded that the Petitioner failed to establish deficient performance or prejudice. The record supports the post-conviction court's conclusions.

Although the Petitioner correctly asserts that counsel has a duty to investigate and the "failure to conduct a reasonable investigation constitutes deficient performance," see Burns, 6. S.W.3d at 463, the Petitioner fails to put forth any facts to support the conclusion that counsel's decisions were not reasonable. As noted by the post-conviction court, "[t]his case was not a complex factual situation." Counsel reviewed photographs of the scene and interviewed all testifying witnesses. It is unclear what more could have been gleaned by visiting the scene. Likewise, the Petitioner's mere assertion that a surveillance video may have existed and may have been favorable to his testimony does not satisfy his burden of proving the factual allegations in his petition by clear and convincing evidence. Without more, the Petitioner's allegations amount to mere conjecture and do not establish deficient performance or prejudice. We agree with the post-conviction court's conclusion that counsel was not ineffective in this regard.

The Petitioner next complains that counsel did not hire an independent expert to analyze and weigh the cocaine, and counsel did not "make an issue" or object to the inconsistent evidence presented at trial. The post-conviction court concluded, and we agree, that the Petitioner failed to establish that counsel rendered ineffective assistance of counsel. Although there was discrepancy in the evidence as to whether the Petitioner delivered powder cocaine or rock cocaine, there was no dispute that the substance delivered was, in fact, cocaine. The Petitioner admitted that the substance delivered was cocaine and the State's expert testified that the substance analyzed contained .55 grams of cocaine. Counsel pointed out to the jury the discrepancy in the evidence by shaking the bag of cocaine during closing argument so that the jury could hear the "rock rattle around;" however, he testified that he had no reason to believe that the substance was anything other than cocaine. The Petitioner offered no proof that the substance was not cocaine, that it weighed less than the State's expert indicated at trial, or that there was a defect in the chain of custody. Thus, we discern no ineffective assistance of counsel in this regard.

The Petitioner next asserts that counsel did not attempt to speak to Kevin Watson, the alleged original target of the drug purchase on the night in question. The Petitioner maintains Mr. Watson's testimony could have been important to determine whether Mr. Newman "was wearing a wire, the type of substance (rock or powder) sold in that transaction, and if there was a conflict in times." However, the Petitioner did not call Mr. Watson to testify at the post-conviction hearing. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "'As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.'" Pylant, 263 S.W.3d 854, 869 (Tenn. 2008) (quoting Black, 794

S.W.2d at 757). Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Black, 794 S.W.2d at 757. Accordingly, the Petitioner is not entitled to relief on this issue.

Similarly, the Petitioner asserts that counsel failed to make an issue of the fact that Director Thompson probably could not see the transaction from where he was sitting because the Petitioner's vehicle had tinted windows and sat much higher than the vehicle in which Director Thompson was sitting during the transaction. The Petitioner did not, however, offer any proof in support of his allegations or call Officer Thompson to testify at the post-conviction hearing. Again, this court cannot speculate as to what the witness's testimony might have been. Black, 794 S.W.2d at 757. The Petitioner is not entitled to relief on this issue.

The Petitioner also asserts that counsel should have impeached the Newmans' testimony "by showing that they had an incentive to tell untruths." The Petitioner maintains that he told counsel that the Newmans' children were taken away by the state and the Newmans would "have done almost anything" to get the children back. Additionally, he told counsel that Mr. Newman accused the Petitioner of having an affair with his wife, Samantha. He believed that counsel should have used this information to impeach the Newmans. At the post-conviction hearing, counsel could not recall whether he asked the Newmans about their children or the alleged affair. He stated, however, that he elicited testimony from Mr. Newman about his "bias and motive to lie" during cross-examination by asking Mr. Newman about his pending charges and compensation for his testimony. He noted that he did not pursue that line of questioning "as much" with Samantha because he believed that some of her testimony was helpful to the Petitioner and did not want to "tear her down too much." The post-conviction court denied relief on this ground, reasoning that the Petitioner failed to establish that counsel's performance was deficient or that the Petitioner was prejudiced. The record supports the conclusion of the post-conviction court.

Initially we note that other than the Petitioner's own testimony at the post-conviction hearing, the Petitioner failed to present proof supporting his allegations. There is no evidence in the record that the Newmans' children had been taken away or that Mr. Newman accused the Petitioner of having an affair with Samantha. Thus, the Petitioner has failed to carry his burden of proof to establish his factual assertions by clear and convincing evidence. Moreover, the transcript of the trial reveals that counsel questioned both of the Newmans about their pending cases and whether they were being paid for their testimony. "Counsel should not be deemed to have been ineffective merely because he failed to employ additional modes of impeachment which may or may not have produced a different result." Raymon Haymon v. State, No. W2005–01303–CCA–R3–PC, 2006 WL 2040434, at *10 (Tenn.Crim.App. July 10, 2006) (citing Williams v. State, 599 S.W.2d 276, 279–80

(Tenn.Crim.App.1980)). "Postulating about one more thing that trial counsel could have done does not mandate a finding that he did not perform effectively." Charlton Garner v. State, W2011-01861-CCA-R3PC, 2012 WL 2384058, at *11 (Tenn. Crim. App. June 25, 2012). The Petitioner is not entitled to relief on this issue.

The Petitioner next asserts that counsel rendered ineffective assistance of counsel by failing to make an offer of proof at trial regarding Mr. Newman's compensation as a confidential informant after the trial court sustained the State's objection. He argues that had counsel made an offer of proof, "this issue could have been used on appeal to show the incentive for the Newmans to be untruthful." As noted by this court on direct appeal, "[t]he purpose of an offer of proof is to enable the appellate court to determine if the trial court's exclusion of the evidence constituted reversible error." Stacy Lee Fleming, 2011 WL 1135760, at *7 (citing Dossett v. City of Kingsport, 258 S.W.3d 139, 145 (Tenn. Ct. App. 2007)). Despite the absence of an offer of proof by counsel in the Petitioner's trial, however, this court reviewed the Petitioner's claim because the error was apparent from the trial transcript.[2] Stacy Lee Fleming, 2011 WL 1135760, at *7. Thus, regardless of any deficiency by counsel, the Petitioner cannot establish prejudice arising therefrom. He is not entitled to relief on this issue.

As his final ground for relief, the Petitioner argues that counsel provided ineffective assistance of counsel by not challenging the validity of the indictment. The Petitioner argues that the indictment was insufficient because it charged the Petitioner with delivery of cocaine in the amount of .5 grams rather than .5 grams "or more." Initially we note that this ground was not raised in the Petitioner's petition or addressed by the post-conviction court.[3] Failure to include this ground in the petitioner for post-conviction relief typically results in waiver of the issue. See T.C.A. § 40-30-106(g) (2012) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," with certain exceptions not applicable to this case); see also State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) ("A party may not raise an issue for the first time in the appellate court.") (footnote omitted). Waiver notwithstanding, the Petitioner is not entitled to relief.

_____

[2] After considering the merits of the Petitioner's claim, this court concluded that the trial court's error was harmless beyond a reasonable doubt. Stacy Lee Fleming, 2011 WL 1135760, at *7.

[3] Although not included as a ground for relief in his petition, the Petitioner testified at the evidentiary hearing that he urged counsel to challenge the validity of the indictment. The post-conviction court did not address this ground in its order denying relief.

Every defendant has the constitutional right to be informed of "the nature and cause of the accusation." U.S. Const. amend. VI, XIV; Tenn. Const. art. I, § 9. It is well established that an indictment is sufficient if it "contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000) (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)). Under Tennessee Code Annotated section 40-13-202, an indictment "must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Indictments that are patterned after the "pertinent language of the statute" are typically "sufficient for constitutional and statutory purposes[.]" Hammonds, 30 S.W.3d at 302 (internal footnote omitted). "The fundamental test of the sufficiency of an indictment is the adequacy of the notice to the defendant conveyed by its terms." Green v. State, 143 S.W.2d 713, 715 (Tenn. 1940). "[I]ndictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." Hammonds, 30 S.W.3d at 300.

In the present case, the Petitioner's indictment reads in pertinent part as follows:

> STACY LEE FLEMING, on or about December 1, 2007, in Tipton County, Tennessee, and before the finding of this indictment, did unlawfully, feloniously, and knowingly deliver a controlled substance, to-wit: Cocaine, a Schedule II controlled substance as classified in Section 39-17-408 of the Tennessee Code Annotated, in the amount of .5 grams, in violation of T.C.A. § 39-17-417, against the peace and dignity of the State of Tennessee.[4]

As noted by the Petitioner in his brief, subsection (c) of the statute at issue differentiates between amounts of the controlled substance in order to determine what class of crime has been committed. Delivery of .5 grams or more of cocaine is a Class B felony, while delivery of less than .5 grams of cocaine is a Class C felony. T.C.A. § 39-17-417(c)(1), (2). The Petitioner argues that the indictment in the present case is insufficient because it only charges the Petitioner with delivery of ".5 grams" of cocaine rather than ".5 grams or more" as set

---

[4] The Petitioner did not include a copy of the indictment in the record on appeal. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). However, the Petitioner set forth the wording of the indictment in his brief to this court. Thus, we elect to address the Petitioner's appeal on the merits despite the less than complete appellate record.

out in section 39-17-417(c)(1). In support of his argument, the Petitioner relies on State v. Hilliard, 906 S.W.2d 466 (Tenn. Crim. App. 1995), where this court held that an indictment was insufficient because it failed to allege the amount of the controlled substance involved and thus, failed to put the defendant on notice that she was facing an enhanced punishment for possession of .5 grams or more of cocaine. Hilliard is quite distinguishable from the present case, however. In contrast to Hilliard, wherein the indictment failed to allege any amount of controlled substance, the indictment in the present case clearly sets forth that the Petitioner delivered .5 grams of cocaine. Even without the precise language of the statute, the indictment provided sufficient notice to the Petitioner that he had been indicted on the delivery of .5 grams or more of cocaine and was subject to an enhanced punishment. Thus, the Petitioner has failed to establish that counsel's decision not to challenge the indictment fell below an objective standard of reasonableness or that the Petitioner suffered prejudice. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-15-